Good morning, may it please the court. My name is Jeff Gorel. With me today is Mr. Jim Hayes. We are here on behalf of the appellant, Ms. Mai Bui. We're here today to try to resurrect Ms. Bui's RICO claim. And I guess the first question that might come to everybody's mind, I'm gonna reserve four minutes hopefully, first question that comes to mind is why RICO? Ms. Bui was relieved of six million dollars in lottery winnings by a trusted friend. And that friend's group of cohorts we refer to as the Nguyen family, who was alleged to run an organized criminal enterprise down in Little Saigon, Westminster, California. And RICO is designed to address people who don't necessarily have their hand in the victim's pocket. Designed to get those people who are further removed from the direct wrongdoing. And this organization that stole Ms. Bui's money was quite extensive. And so we look to RICO to reach all of these people and to recover as much of that money as we can. Ms. Bui is 79 years old. Luckiest time in her life is to win six million dollars in the lottery and then she proceeds to have it stolen from her by people she trusted. So that's why we're here today. But... Can I ask you a practical question without getting to the law for a minute? She's 79? 79. This case has been dragging on for a number of years and if you win it'll drag on from for more years. Why were you not content with just bringing a simple state court action? I know it's treble damages and counsel fees, but as a practical matter, you could have possibly even brought the RICO case in state court as well. Instead of instead of this long, drawn-out process that you're engaged in, where she may not even be alive if you were successful to see any of the proceeds. Well that goes to what I what I initially said, is that we have, you've obviously got the two primary defendants here, Defendant Lan and Defendant Hung. And we felt confident that we could reach those two people under state law. But then you're looking at the the extended family members that were also involved in this criminal activity, the wire transfers overseas, the gentleman who helped facilitate the West Hollywood transfer, who Ms. Bui didn't even know. And they submitted a forged affidavit claiming that he was her brother-in-law when they had no idea. Ms. Bui had no idea who this gentleman was. The son who on paper owned property in Santa Anta that was actually stolen from another person through an identity theft ring. A lot of these people had no direct contact with Ms. Bui, but yet we're dealing with people that are, for lack of a better term, slippery. And it's always a concern when you're trying to collect judgment from folks like this, because they make their living out of hiding money. And we don't know whether they've got it hidden with individual X or individual Y, under corporate shell A, B, or C. And so just, just, you don't want to go through this whole drawn-out process and then end up with a worthless judgment. If we're going to go through this process, we want to make sure they can't just transfer the money to some other individual that's beyond the scope of the original lawsuit. RICO is designed to do that, to allow us to get all of these people under one umbrella and to cut off their ability to transfer that money away from Ms. Bui. Yes, we don't want to, we don't want any of this, but it happened and now we're left with this circumstance. And so the district court, though, said we don't have a RICO claim. And that order cannot stand. It cannot stand because it was infected from the beginning by a prejudice against civil RICO claims. At the very first scheduling conference, the district court said, I don't believe in such a thing as a civil RICO case. I don't believe that animal exists. That sentiment, which may have been popular 30 years ago, has been long disabused by the Supreme Court. In 1985, the Supreme Court said in Zedema, that doesn't matter. You can't arbitrarily dismiss RICO claims. Doesn't matter how much you dislike them. Doesn't matter how much you dislike mail and wire fraud in a civil context. But what should we do? So he said that, what is that, where does that lead in terms of this decision in this case? It leads to all of the very erroneous decisions he made in misapplying precedent that the Supreme Court established some, in the Pereira case, 63 years ago. There's four, now it's hard to say that there's black and white letter law under RICO, but there is. And this judge disregarded four key Supreme Court cases. The first one, I'll talk about the Pereira case from back in 1954. The Supreme Court said it's okay if the victim mails the item that establishes the mail fraud. That's okay. Judge Carter threw out four of our five uses of the mails because they were wire transfers by Ms. Bui, saying the victim can't supply the wiring element. So they ought to get at least two. So he threw out, if he'd have thrown out three it'd have been okay, but he got four. So you can have a pattern on one. Why was that bad? It was bad because he claimed there was no open-ended continuity, there was only closed-ended continuity, and in that regard, I think he disregarded the H. J. Ng case and the continuity standards. But Pereira, he completely disregarded. Victims can supply the mailing element, the wiring element. Schmuck, he completely disregarded. The wires and mails can be innocent. They don't need to contain false representations. These are old, old, old precedents that were completely disregarded. What about, it seems to me that the focus of your argument should be on the pattern. Absolutely, but, and I'll go to that right now. Going to the open-ended issue, H. J. Ng says you've got two ways to establish continuity. You've got open-ended and closed-ended. We clearly established open-ended continuity here. You can have open-ended continuity on one threat. I'm gonna break your legs unless you give me a thousand dollars every month. That's a threat of indefinite duration. That's one statement. Now, in this case, you've got that open-ended threat. They say, well, we quit stealing money from her in December of 2012. That was not the scam here. The scam here was, give us your money, we'll invest it, we will grow that money, and then we will return it to you. At no point in time did they ever tell Ms. Bui, these investments don't actually exist. You're never gonna get this money back. They completely continued to lull her and mislead her, even after her family got involved. And we all know, mail and wire fraud apply to half-truths, to schemes that violate standards of fair play. And if this scheme doesn't violate standards of fair play, when you're dealing with an elderly individual who barely speaks English, and you're taking advantage of that vulnerability and her trust in you, and you are using the mails and wires, necessarily using the mails and wires to advance this scheme to purchase properties throughout the Los Angeles area, and you never stop, even when the family confronts you. Just take a look at the West Hollywood transaction. Let me go back. I tried to stop you, but I thought you ought to be able to end your argument. But let's go back to the open examination. If I look at the complaint, it seems to me that what you allege are actions, but I'm trying to have a thread of extending into the future. It seems to me, reading the complaint, after December the 3rd of 2012, no further actions are taken by the defendants that could be considered fraudulent. Really? I think that they had a continuing duty of disclosure. They were her business partners. They owed a duty to disclose material information, such as, we didn't take your $3.2 million and invest it in Huntington Beach, too. We stole it. We transferred it to Vietnam. That is an ongoing fraudulent omission that continued well into the 2014 era, as we allege in the complaint. They cannot get the... They only stopped when they were confronted with a lawsuit. And just like a criminal defendant can't claim, well, yeah, my racketeering activity stopped when I was indicted and sitting in prison, a civil defendant can't claim that they posed no threat of indefinite duration when they were sued, and then they finally stopped. These people, we still don't know where a lot of her money is. They still have not come forth and told us what actually happened. Instead, even when her family got involved, they lulled her into a false sense of security, saying, yes, those investments are gonna pay off someday. Oh, well, sometimes when you invest money, it just gets lost. They didn't say, we stole your money and just threw it away, gave it to relatives overseas. This was a continuing fraudulent scheme here. And part of that scheme, as I said, in the scheme that they set up was give us your money, we'll keep it, we'll take care of it, we'll give it back to you. This wasn't a scheme where they said, give me your credit card number and you're never gonna see your money again. This was a scheme that was intended to draw out Ms. Bui over an extended period of time. They were going to... And I can only presume that if any of these investments had ever paid off, they would have come back to her and said, well, now let's reinvest in something else. And they would have continued to defraud her. And it's open ended, if ever there was an open ended pattern. But even if you don't like the open ended argument, I'll argue closed ended continuity. Okay. And that... And then I said, well, my thought, look, reading the complaint, reading what we got here, that the predicate acts occur between November 1st, 2012 and on or about December 3rd, 2012. And with all due respect, I will correct you in that the uses of the mail... I would like you to, that's why I ask you the question. Yeah, the uses of the... I'm not trying to get corrected necessarily, but I wanna know what the facts are. And it's... I mean, it seemed to me your attempts to lengthen this period by arguing other events misreads the requirement which dictate, and here's what I got, the predicate fraud sets the timeline. Alright, well, there's two problems with that. Number one, and I'll address the first one, which is the simplest way. Number one, there's nothing that says you measure the length of a pattern by looking at the dates in which the mails and wires were used. That's one way, certainly courts do that all the time, but there's two elements of mail wire fraud violation. Use of the mails and wires, which is simply the jurisdictional hook to pull you into federal court. We've got those uses already. Well, if I say you've got the uses, say... I mean, I got wire fraud, three viable wire fraud instances out of five. November 1, 2012, November 6, 2012, and December 3, 2012. I disagree with the district court, so I went through and I said, it doesn't seem to me that your allegation about the November 1, 2012 wire transfer makes it. I don't think the undated mail fraud allegation contains sufficient detail and pleadings to make it, but I can make it out of three. So then I put the closed examination from those dates. That's how I did it. But that's, with all due respect, focusing on the use of the mails and wires, that's only part of a mail wire fraud violation. The substantive thing that mail wire fraud addresses is the scheme to defraud. And we allege a scheme to defraud that began August 2012, when that first $40,000 loan was made, and it certainly didn't end any time before March of 2014. That scheme lasted 20 months. Now, you wanna focus on individual uses of the mails and wires. And I said, courts do that all the time, but there's no rule of law that says that's the only way to define the length of the pattern. Well, the reason courts do that all the time is because there's precedent for doing it that way. And all I'm trying to do is get you to tell me why that precedent is wrong. Well, it's not wrong because it's done all the time, but there are other ways to define the length of the pattern. And I'm arguing you can also look to the length of the scheme. I'm also arguing that Rule 9B does not require her to know information that's within the defendant's control. Rule 9B, she's got Rule 11 obligations too, she can't make stuff up. She pled what she knew because she made those wire transfers. Under the Neubrauner case, which was a 1993 from this court, the court says you can necessarily presume other acts of mail and wire fraud when that information is entirely within the defendant's control. Here, how do you engage in all of these transactions? How do you email closing agents? How do you email title agents? How do you telephone call banks? How do you do all of this without using the mails and  wire? So that if you... What you're saying is if you had... If the case went to discovery, it would indicate even additional mailings, assuming the mailings are the sine qua non of your success. Even if you accept Judge Smith's argument, we will discover... All they have to do is open up their Outlook mailboxes and pull out any email that relates to Ms. Bui. There's nothing legitimate about this relationship between Ms. Bui and the Nguyen family, nothing. They know what they're required to do. They're put on notice of what they need to defend against. And they know that. If you accept their Rule 9b argument, that we are limited to these four acts that Ms. Bui herself committed, and we aren't even entitled to discovery on anything more, you're rewarding them for choosing a very vulnerable person who didn't even know enough to say, hey, CC me on your emails to the closing agents. CC me on your letters to the banks. You're rewarding them for choosing a good victim. Don't do that. Don't accept that 9b argument. Is it your view that this was one overarching fraud? Because it seemed to me in reading your complaint, you seem to have each particular act of theft, shall we call it for shorthand, as a kind of a separate fraud. Well, the presence of separate schemes is another way in which you can look at continuity, especially in the open ended context under H.J. Inc. H.J. Inc. rejected the separate scheme approach because it's too subjective. But it said you can still look, if there are separate schemes, that indicates a greater likelihood that this is a threat of indefinite duration. Isn't this... I mean, it strikes me that this was one scheme. And that's what I get from your argument. That's the whole problem with the scheme approach. Is this one scheme with a master investment fraud situation or is it four separate schemes involving four different parcels of property? Which is why the Supreme Court said you can't rely only on schemes because it's too subjective. Schemes might help you determine whether something's open ended. And these schemes, I would say in this instance, they are informative because they became increasingly more brazen. The Huntington Beach 2 transaction, they didn't even bother to buy property, they just took the money. And the West Hollywood property, the last one, they set up this whole fraudulent letter, they set up this brother in law that didn't exist. And they kept... It's not like they were ratcheting back their activity, they kept getting more and more and more sophisticated and more and more brazen as time went on. And I would say from the scheme approach, that's valuable, that's informative because it indicates they weren't slowing down, they were continuing. It's an open ended threat. And I will sit down for now. Thanks. Thank you, counsel. May it please the court, I'm Michael White, I represent the Appalese in this matter. Let me start with the pattern issue. There's no question that this was not an open ended pattern at all. Any threat of continuing activity, it ended over a year before this alleged confrontation that led to it. There's nothing that took place... What is your theory about when it ended? It ended when the last... The pattern, as far as... I'm talking about the pattern, yes. Okay, the pattern ended, as Judge Smith pointed out, it ended on December 3rd, 2012, when the last alleged predicate act occurred. Well, it seems to me, I have some sympathy for the argument that the essence of the crime of mail fraud is the fraud. The mailing itself is essentially the federal jurisdictional element. And when most people talk about fraud, in most of the cases, they always focus on the fraud itself. And what you're doing is sort of trying to separate out the jurisdictional element from the fraudulent conduct. No, actually not. And it seems to me that the fraudulent conduct under his theory extended beyond that December date, that it doesn't... It's not precisely the date of the mailing. A scheme to defraud is an inchoate offense. It's like a conspiracy, except you don't need co talking about whoever devises a scheme to defraud. You don't count acts that may have preceded the first mailing or conduct that might have come after the last one. It still has to tie... The pattern still has to tie to the predicate acts, not necessarily to a... In other words, it isn't just... The mailing isn't... It isn't that as... And I think the district court did overstate this, that the mailing itself or the wire itself doesn't have to be fraudulent to invoke the mail or wire fraud statute. But in order to have it be a pattern of racketeering activity, the pattern of predicate acts is still important. You can't simply tie an isolated mailing... The pattern is these repeated... This poor woman got 6 million dollars in a lottery, and through a course of conduct that began with the first instance of where he fraudulently induced her to loan money of $40,000 until the last act, which was possibly the sale of property that she... That rightfully belonged to her. That was a long fraud, and the fact that it... The mailings, whatever mailings were obvious may have suggested that it ended in December, I forget of what year. Shouldn't she have an opportunity to take discovery to determine whether there were more mailings or the uses of the wire during this period from the time he may have first conceived this fraud until the time that it ended? Well, even if you assume... Let me hit first... Yes or no, I would appreciate. Shouldn't he... Shouldn't... No, not in this circumstance. Why not? Because there are... First of all, even if you look at the entire pattern of alleged fraudulent conduct, it isn't nearly as extensive as is being creatively argued today. The first fraudulent transaction that's alleged to have taken place, and they label these... Extensive enough to get $6 million from this poor, illiterate woman if you read the complaint. Yes, but that doesn't... The size of the transaction doesn't establish a... No, it took them some time to fully drain the money from her, and if she had had $20 million, they might have taken them a little longer. Well, you can only look at what the facts that are here... No, I know, but my question is, why shouldn't she... If you're gonna focus on the predicate act as being a mailing or a wire, why isn't there enough for her to get additional discovery to see how many more there were? Because she could only know... The only reason she knows about the three or four is because she was the one who actually made the transfer, or they caused her to make the transfer, and the district court was wrong, of course, when he said that that didn't count. So she knew about those, but there may be others in this as the scheme began and ultimately came to an end. I mean the scheme to the fraud, not the last mailing. There may arguably have been other instances that she doesn't know about, and why shouldn't she be able to at least take discovery to see whether that's the case? Because there's nothing beyond speculation to suggest that there's anything else. Well, I don't know if it's speculation. Well, let's start with the wire transfers. All their allegations about the wire fraud relate to transfers of money done through the wires. They've alleged all the ones that existed... Yeah, but they could have continued to use the wires as part of the overall scheme. Well, there's nothing in this complaint that even suggests that that's the case. The money was wired... Well, for example, I'm just pulling this off the top of my head. There's an issue of whether some papers were mailed from Virginia to, I guess, California. You know, the discovery might indicate that there was actually a mailing. Except that under the Supreme Court precedent, including Schmuck and all of its predecessors, that wouldn't constitute a predicate act of mail fraud. All that was, for example, the one mailing they alleged was a mailing which facilitated the disposal of the ill-gotten gains. In other words, it's as if the fraud was complete when they obtained the money. The allegation there... What's your definition of a predicate act of mail fraud? As I understand the mail fraud statute, there simply has to be a cause, a mailing in furtherance of the scheme. It has to be in furtherance of the scheme. In furtherance of the scheme. In furtherance of the scheme and not... And perhaps to carry it out, sort of like an overt act in a conspiracy. Yes, exactly right. And in that case, that mailing had to do with the... Once the proceeds were obtained, what the allegation there, remember, was they just took $170,000 from an account and used it to acquire property for themselves. That's the allegation. It's not an allegation they did it on purpose. Wasn't their money. Right. And so... It was money that they stole. The crime is complete when they took the money, according to the allegation. It's not complete when they buy a Mercedes with it. It's not complete when they obtain proceeds. So you say. Well, that's what the Supreme Court precedent says. That's what, in Schmuck, they distinguished between Mays and all those predecessors to Schmuck, that in those cases, it simply was something incidental following the completion of the alleged fraud or the alleged crime. That's the distinction. What's your definition of incidental? Well, it would be something like if somebody were to buy something with, I steal money from you and I buy something with it. The buying something with it doesn't constitute anything. I guess you could argue it's incidental to the theft, but it's certainly not integral to it. It's certainly not related to it in the way that Schmuck requires. It has to be something that in order for it to be a mail or wire fraud, it has to relate to something which is essential to the carrying out of the fraud itself. That's what is in here. Let me, but, and in this case, there's nothing to suggest beyond. The mailing doesn't have to be essential to the carrying out of the fraud, as I understand it. It simply has to be in furtherance of it. In furtherance. Not essential to. It could be, you know, the cases are quite, in my recollection, is the case. That's why, for example, the fact that she sent the wires is not relevant. Absolutely. That's correct. And I think the district court erred in that respect. But it still has to be something which is, for example, in Schmuck, it was the mailing of registrations that was pursuant to the underlying fraud in there. And the Supreme Court found that that was essential to the carrying out of the fraud. If there had been a, suppose, for example, the defendant in that case sent a letter confirming what he had done to somebody unrelated to the transaction, that wouldn't be enough. It's not, it's incidental to it. It relates to it. But it's not something that's either necessary to or carried out and pursuant to the fraud. Now, let's get back to why none of that even matters. And I think because any discovery on this, there's been no showing that any of this would have any likelihood of producing anything beyond conjecture. But even if you take the entire scheme, even if you take the scheme as it's alleged in the complaint, and they allege it as four schemes, you could, they did it that way, I didn't do it, and one could argue it's one scheme, but they allege it as four schemes. They also allege, you could argue perhaps, that there's a fifth scheme, and that is this loan that took place before. But I would point out that nothing about that first loan is even alleged to be fraudulent. The way they allege it was, well, they did that just to see if it would take, but there's a note that supports that. And that isn't even alleged to be fraudulent on its face. Was the note repaid? No. No, it was not. Did he ever intend to? Do you have to, do you have to, do you have to, you know, I mean, it's common sense reading that in light of everything else was that they never intended to repay it. It was, it was basically, it was basically a note that was given without any intention to. And in that case, there's a claim made, and there is a claim made to repay the note. There's a claim made for a fraud based on a fraudulent promise. Those are all claims that can be made. Does it make it a RICO claim? Now, even if you took that- It's not a question of whether it makes it a, the direct question is whether it's, it's part of, it's part of the scheme to defraud, which is what would make it a RICO claim. Only if- How do we know that we, how would she know without any kind of discovery whether the note was used there? It, I, I don't see how the mails could have been used there. I don't know. And they certainly haven't raised any question of that. It's, it was, they asked her to, one of the defendants asked her to make a personal loan to him. Yeah, well, maybe- What did they do with any other defendants? Maybe he mailed the check to the bank, through his own bank. I mean, you know, what, what troubles me here is that this is a, this is an outrageous fraud, and there's no discovery, and she's, she is not a, she can't, that, that arguably extend it over a much longer period than you suggest. Well- And without discovery, she can't, she, she's unable to locate other instances which would support her claim about the length of the fraud. And, and, and if we're, we're pegging it to mailings and, and, and, and, and wire fraud, there may be more instances. And why on this record shouldn't she be allowed to get additional discovery? If you just simply take, I, I don't think there is a, a right to expand a discovery to expand your allegations. So let's start with what the allegations that are made. We have the four schemes that are alleged. Then there's this loan that took place before. Those take place over a very narrow span of time. Well, suppose she, suppose she alleged it all as one scheme. It doesn't- Yeah, that it still only lasts, it still only, the, the alleged fraudulent transactions, and, and, and fraud, that the loan, by the way, isn't even alleged as a fraudulent transaction. It, what's alleged is- Well, it's alleged as part of, it's, it's the first step in the scheme to defraud. That's what I read it as. That's- And he, he, you know- All right, well, there, there is an allegation- But, but that was obviously the first step in the scheme to defraud. Well, we could allege anything as, as the first scheme. No, it- It has to plausibly relate to- But, but it, but it does plausibly relate. Suppose the scheme began with his, with the fraud, let, let me first get $40,000 from her by making, by defrauding her by making a promise that I don't intend to keep, and then I'll go on. I mean, it seems to me that, that, that, that's a reasonable starting date. But even taken that way, you have the, the longest the scheme goes. Assuming you do it all that way, you count that as part of it, and, and, and, even if that assumes, you still do not have an open-ended pattern, because there's still nothing that shows anything. Once the, the last transaction that occurs, the last obtaining of any money from her is in, is I believe in March of 2013. Over a year passes before this, any alleged confrontation with her. The first time there's any questioning of any of the transactions is almost a year later. Nothing took place in there. Well, that's what I mean. It takes time, it takes time to discover fraud. That's why there's the longest statute of limitations for fraud. And that's why that wouldn't be a defense here. But, but it has nothing to do with whether or not there's an open-ended continuity. There's no threat of any continuing harm after that. There's nothing to suggest that anything would take place after March 2013, because nothing did. We, we can look at that, and we have the record that shows that. And, and the notion that the, that counsel raised, that it's a continuing fraud because they didn't tell her, they defrauded her in that time, that, that would make every fraud, every one-shot fraud, every fraud would be a continuing fraud, because in every case, obviously, the defendant doesn't inform the plaintiff of, of the fact that he defrauded them. So that doesn't have anything to do with it. Might be, there might be, but there could be affirmative acts of concealment. It, it's still not, it, it, that could be, but it doesn't, but that doesn't indicate. But that, that furthers the scheme. But it doesn't indicate any continuing threat. In other words, the, the open-ended, open-ended pattern is an exception to the rule that it would have to be a long period, because there's a threat that there could be continuing conduct, like continuing to take money, continuing frauds, continuing, and there's nothing to suggest that that's the case. That's purely speculative. So what we're left with is a closed-ended pattern. And the closed-ended pattern here extends over a very short period of time, even if you counted on the most extensive possible reading. And I would point out, to, to try to claim the, the way they attempt to allege that it goes on for 20 months, and that's inconsistent with what they allege in the complaint. The complaint alleges it's an 11-month transaction, stretching it out as far as you can. Then they, they, apparently realizing that that wouldn't do it in this circuit, or in other circuits particularly, they attempt to argue that it goes for 20 months. And, and the way they, they bootstrap on is to allege that the last fraud isn't complete until the time that they dispose of the property. Is there, is there a flat-out rule that 11 months is not enough, or that we have never held that anything beyond the, shorter than a particular period is not enough? I, I think it's, I don't believe there's ever been a case where they've held that even 11 months, and I don't think this is 11 months, but even assuming it's 11 months, there hasn't been any case which says that, that's enough. There are cases, there's a case that they cited that's 13 months, there's a case that's saying 20 months, or two years. There are cases, there are cases in other circuits, including the Second Circuit, which says that two years isn't enough. There are cases in this circuit which say that a number of months isn't enough, that, that, as I said, 13 months, six months. There's all different levels that you look at when you're looking at the pattern. And, and the strict language of the Supreme Court cases on this simply says that, that it has to be more than, it has to be an extended period of time, more than a few months. Here we have at most a few months. All right, counsel, thank you. Thank you. We understand your argument. Mr. Bottom? I believe I've exhausted my time already. Yes. We'll give you a minute. But if you have a question, I'll take that first. All right. Otherwise... in an amended, in yet another amended complaint. Well, I believe there has been some additional fact-gathering from lead counsel on this case, and I believe that we could potentially allege more uses of the mails and wires. I would restructure the enterprise allegations to make the enterprise smaller and to bring in some of these other tangential players as conspirators rather than operators and managers of the enterprise. I didn't allege this original complaint. So that has been one of my... So you represent, in effect, you found additional mailings and wires in addition to what's alleged in the complaint. Is that what you're saying? I would have, yes. I would have to defer to my lead counsel. He says that, yes, over the course of the past four years or three years, there has been additional fact-gathering, such as the West Hollywood property was a transaction that we discovered on our own that was never disclosed by defendants. And they have been continuing to purge the records, the public records that are available, to try to find additional evidence, yes. And they have been successful in that regard. The problem we have with amended complaints is if the district court says, okay, I'm going to dismiss your complaint, but I'm going to allow you to amend, and then gives you specific ideas about where you could amend to make it a better complaint, and then you file the next complaint and it really doesn't address the deficiencies that the district court, I guess based on the order, has said that you ought to amend, then at that point it's hard for us to say the district court has abused their discretion in saying you should be able to amend again. How do you respond to that? Well, I believe this current complaint is actionable. Well, I know you do, but if the district court didn't, and supposing we don't, then at that point we're at the motion to amend. And at that point we're at a place where the district court noted specific deficiencies in the complaint, said you need to do some more things to make that happen. It didn't happen, so they dismissed without leave to amend. And it's generally the case when it's an abuse of discretion, standard of review, that we don't undo that. So tell me, how am I going to go around that? Well, we were given a very short period, I mean relative to the entire length of the scheme, we were given a short period to come up with additional facts to allege. I think that the district court, like I said, they were predisposed to rule against this complaint in the beginning. They dismissed the original complaint, this first amended complaint, before we had even had oral argument, before anything. And then the second amended complaint was a relatively short porch that we were given to correct. Now we've had three years of additional time to discover more evidence, and they've hired me. I can clarify a lot of the allegations I think that were confusing the district court. For example, the length of the pattern, the length of the scheme. And I'm confident that if we're given a chance to amend, we can come up with a much stronger complaint, and hopefully we can convince Judge Carter that we do have an actionable claim. And certainly I agree with the chance to conduct additional discovery would be, in my mind, a goldmine for us. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman